## IRON CLAD MANUFACTURING COMPANY *vs.* THOMAS B. STANFIELD ET AL.

*Building Contract—Substantial Compliance with Specifica-
tions—Recoupment for Deficiencies in Action for Contract
Price—Measure of Damages—Instructions to the
Jury—Evidence—Waiver of Exception
to Testimony.*

In an action to recover a balance due on a building contract, a prayer instructing the jury that if the plaintiff erected the building in substantial accordance with the terms of the contract, and it was used and accepted by the defendant, then the plaintiff is entitled to recover, is not open to the objection that it declares that a substantial compliance with the speci-

fications entitles the plaintiff to the full contract price. This prayer goes simply to the plaintiff's right of recovery, and the measure of damages was dealt with in a subsequent instruction.

When the building as erected by a contractor is in substantial conformity with the specifications, but there are in it certain deviations and deficiencies, there should be deducted from the contract price the difference between the value of the building as erected and the value of the building contracted for, and the contractor is entitled to recover the contract price less that sum.[*]

When a contract calls for the erection inside of a building of a loading platform of the same height as the floor of freight cars on an adjoining track, then, if the owner requests that the construction of a platform be postponed until the elevation of the track is ascertained, the builder is not responsible for the delay so occasioned.

No deductions from the contract price of a building should be made on account of deviations from the specifications made by direction of the owner, or on account of damage to a wall in the building caused by a third party acting under the orders of the owner.

In an action to recover a balance due on a building contract, a prayer offered by the defendant instructed the jury that if they found that the plaintiff did not perform the contract in any one of ten enumerated particulars, they should deduct from the contract price the reasonable cost of putting the building in the same condition it would have been if the contract had been performed in all respects. *Held,* that this prayer was properly rejected because, as to some of these particulars, there was no evidence of a failure to comply with the contract, or in others as to what it would cost to make the building conform, and as to one of the particulars the requirements of the contract were not correctly stated.

---

[*]Appended to the case of *Foeller* v. *Heintz*, 24 L. R. A. (N. S.) 327, there is a note collecting many authorities upon the right of recovery when a building contract has been substantially but not completely performed; as to what constitutes substantial performance, and the measure of recovery.

A contract for the erection of a factory building provided that the owner should have the option of having a cement floor instead of a wooden floor at a designated additional cost. The owner afterwards elected to have the cement floor. *Held,* that the cost of a wooden floor should not be deducted from the contract price.

The contractor who erected a building when a witness in his action to recover a balance claimed to be due may be asked the following question: "Can you state whether or not, based on your experience as a builder, this building was put up in accordance with the written specifications, plans and the contract?" This was not a hypothetical question to an expert having no actual knowledge of the facts and designed to elicit a mere opinion; and it was followed up by questions as to each provision of the contract.

The objection to a question as leading must be made on that ground when the question is asked, so that the examining counsel may put the question in the proper form.

Exceptions to certain evidence will be treated as waived when that testimony is subsequently rendered immaterial by an instruction to the jury granted at the request of the exceptant.

It is within the discretion of the trial Court to refuse to allow questions to be asked on cross-examination relating to matters fully covered by testimony already in the case.

When the defendant alleged that a cement floor laid by the plaintiff was defectively constructed, the plaintiff may offer evidence to show in what way the defendant had himself damaged the floor after it was laid, and also evidence of admissions to that effect made by the agent of the defendant.

*Decided January 12th, 1910.*

Appeal from the Superior Court of Baltimore City (STOCKBRIDGE, J.).

The prayers referred to in the opinion of the Court are as follows:

*Plantiffs' 1st Prayer.*—At the request of the plaintiffs the Court instructs the jury that if they find that the plain tiffs and defendants entered into the written contracts dated April 20, 1905, and supplemental contract dated May 9, 1905, admitted in evidence, for the erection of a factory building at Bush and Wicomico streets, in Baltimore City, and thereafter the defendants elected to have a concrete floor placed in said building as provided for in said supplemental contract, and thereafter the plaintiffs constructed said factory building in substantial accordance with the terms of said contracts, and within a reasonable time, and that the said building was thereupon occupied and used by the defendants as a galvanizing factory and continued so to be used by them for several years thereafter, and was reasonably satisfactory and acceptable to said defendants, and there is a balance still due and unpaid by the defendants on account of the construction of said building, then the verdict of the jury shall be for the plaintiffs, the defendants admitting in open Court that no contention is made against the right of the plaintiffs to recover by reason of the lack of approval of the master mechanic of the defendants. (*Granted as modified.*)

*Plaintiffs' 2nd Prayer.*—That it being admitted there is some amount due the plaintiffs by both defendants on account of the contract offered in evidence, the measure of damages to be awarded the plaintiffs is as follows:

The amount of the contract price, to wit, $12,900, less the payments on account made by the defendants, and less such sum, if any, as the jury may find should be deducted from the contract price on account of the defects, if any, found by the jury in said building, caused by the lack of workmanship on the part of the plaintiffs (or by the use of materials other and inferior to those specified in the contract), or any deviation from the plans and specifications not acquiesced in by the defendants and shown to have made said building less valuable to the defendants, together with interest at six per cent. in the discretion of the jury, on said balance, computed

from four months after the completion and acceptance of said building by the defendants. (*Granted as modified.*)

The part in brackets was inserted by the Court.

*Plaintiffs' 3rd Prayer.*—That if the jury find that the plaintiffs completed the building by July 1st, 1905, except as to the erection of the loading platform, and that the construction of said platform was postponed by request of the defendants, and was afterwards erected promptly upon request, and in the manner directed by the witness, Conn, acting under instructions from the defendants, then the jury may find that the building was completed July 1st, 1905, within the meaning of the contract. (*Granted.*)

*Plaintiffs' 4th Prayer.*—At the request of the plaintiffs, the Court instructs the jury that if they find for the plaintiffs, there should be no deduction made from the balance, if any, due under the contract price for deviations, if any, from the provisions of the contract, which were made by the plaintiffs in consequence of directions from the defendants or their duly authorized agents. (*Granted.*)

*Plaintiffs' 5th Prayer.*—That no deduction or abatement should be allowed the defendants for any damage to the wall of the factory erected by the plaintiffs for the defendants under the contracts in suit, if the jury find that such damage occurred to said wall by reason of any excavations made near to said wall for the installation of the railroad switch referred to in the testimony in this case. (*Granted.*)

*Plaintiffs' 6th Prayer.*—That no deduction or abatement should be allowed the defendants for any damage to the wall of the factory erected by the plaintiffs for the defendants under the contracts in suit, if the jury find that such damage occurred to said wall by reason of the sinking of the said wall, due to the character of the soil upon which said wall was built. (*Refused.*)

*Defendant's 1st Prayer.*—If the jury find that the three papers of April 20, 1905, offered in evidence, were all signed by the respective parties thereto, at the same time and place, then the jury are instructed that by the contract between the

parties of April 20, 1905, and the subsequent contracts of May 6th and 9th, 1905, offered in evidence, and the letters from the defendant to the plaintiffs of May 10th, 1905, and June 5th, 1905, and the letter from Stanley McIntosh, purchasing agent of the defendant, to the plaintiffs of June 1, 1905, the plaintiffs agreed to do the following among other things: First, to gurantee the walls they were to put up against cracking or bulging for ten years, unless such cracking or bulging were caused by a cyclone or carelessness of defendant or an accident for which plaintiffs were not responsible; secondly, to guarantee the roof against leaking for ten years; third, to put skylights in the roof six feet by seven feet in size; fourth, to put as many skylights in the whole roof 6 by 7 as would give the same amount of light over the whole building that six skylights five feet by six feel would have given in the building first contracted for, viz, 58 feet by 105 feet; fifth, to use posts eight inches by ten inches in size; sixth, to put concrete foundation three feet deep under each post; seventh, to make a concrete floor throughout the building of the material and mix specified in plaintiffs' letter of May 10, 1905; eighth, that such floor would not show material defects within five years under the ordinary uses of a cement floor in such a factory building; ninth, to erect a loading platform seven feet wide of the same height as a floor of a freight car and to run slant from the height to the floor so that it will make it easy to load with hand trucks, along the whole length of the west side of the building; tenth, to furnish all material of the best quality of its specified kinds and to do all the work in the best workmanlike manner.

And if the jury find that the plaintiff did not perform their agreement in any of the particulars herein mentioned according to the contract, then the jury should deduct from the balance of the contract price unpaid, the reasonable cost of putting the building contracted for in the condition it would have been in if the plaintiffs had performed their agreement in all said particulars according to contract.

But if the jury find that in any particular the plaintiffs' failure to conform to the contract was assented to or waived by the defendants, then the jury should not allow any deduction for such failure in such particular to conform to the contract. (*Refused.*)

*Defendant's 2nd Prayer.*—If the jury find that the three typewritten papers each dated April 20, 1905, and offered in evidence, were all signed at the same time; and if the jury find that the typewritten papers of May 6th and May 9th, 1905, offered in evidence, were duly signed by the parties thereto, then the jury are instructed that the said papers and the drawings referred to in one of the papers of April 20, 1905, constituted a contract between the parties, and that by said contract the plaintiffs undertook that the work therein contracted for should be done in the best of workmanlike manner; and if the jury find that any of the work was not done in the best of workmanlike manner, and that by reason thereof there were defects or imperfections in said building which lessened the value thereof, then the jury are instructed that from the balance of the contract price remaining unpaid, the jury should deduct such sum as they may find the value of the building was lessened by reason of such defects or imperfections. (*Granted.*)

*Defendant's 3rd Prayer.*—If the jury find the execution of the papers forming the contract as mentioned in the first prayer, then the jury are instructed that by the contract the plaintiffs guaranteed the roof against leaking for ten years; and if the jury find that the roof has leaked, then the jury are instructed that they should deduct from the balance of the contract price remaining unpaid, the amount which the jury may find the value of the building was damaged by reason of the leaking of the roof. (*Granted.*)

*Defendant's 4th Prayer.*—If the jury find the execution of the writings mentioned in the defendant's first prayer, and shall further find that one or more of the walls of the building erected by the plaintiffs in pursuance of said contract have cracked, then the jury are instructed that they

should deduct from the balance of the contract price remaining unpaid, the amount which they may find the value of the building to have been damaged by said cracking of the walls, provided the jury find that said cracking was not due to a cyclone or carelessness on the part of the defendant, and that the measure of such damage is the amount which the jury may find would have been a reasonable cost of putting said walls in a good and proper condition, such as they would have been if they had not cracked. (*Granted.*)

*Defendant's 5th Prayer.*—If the jury find that the plaintiffs agreed to put down a concrete floor for the defendant of the materials and proportions specified in the letter from the plaintiffs to the defendant of May 10, 1905, offered in evidence; and if the jury find that the plaintiffs agreed to guarantee said floor for five years; and if the jury find that within less than five years the said floor became cracked and soft, and that such defects resulted from unskilled or improper workmanship in the mixing or laying of said concrete floor, then the jury are instructed that they should deduct from the balance of the contract price claimed by the plaintiffs, such sum as they may find the value of the building was lessened by reason of such defects or imperfections. (*Granted as modified.*)

*Defendant's 6th Prayer.*—If the jury find under other instructions in this case, that the defendant is entitled to a deduction from the balance of the contract price remaining unpaid, because of the plaintiffs' failure to fully comply with the contracts on their part, then the jury are instructed that such deduction should be made from the principal of fifty-one hundred dollars ($5,100.00) and interest allowed, if the jury see fit to allow interest, only on the balance so ascertained; and the Court instructs the jury that whether or not they shall allow any interest to the plaintiffs is a matter entirely in the discretion of the jury under all the circumstances of this case. (*Granted.*)

*Defendant's 7th Prayer.*—The Court instructs the jury that by a true construction of the several papers constituting

the contract or contracts between the parties, there should be deducted from the amount of the first contract, and hence from the amount now claimed by the plaintiffs, such sum as the jury may find would have been the reasonable cost of the wooden floor, contracted for in the first contract of April 20, 1905, the undisputed evidence being that said wooden floor was never put in. (*Refused.*)

The defendant excepts generally to the granting of plaintiffs' third prayer and especially on the ground that there is no evidence to sustain the following statement in said prayer: "That the construction of said platform was postponed at the request of the defendant, and was afterward erected promptly upon request." (*Exception overruled.*)

The cause was argued before BOYD, C. J., BRISCOE. PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*S. S. Field,* for the appellant.

The question in the first exception was objectionable on two grounds: (1) Because it is leading; and (2) because it asked a witness, and that witness the plaintiff, to answer the precise question that the jury were to decide.

(1) The question palpably called for the answer yes (the answer was: "Yes, sir; it was"), and thus the question fits exactly the definition of leading questions, "which suggest to the witness the answer desired, or which embodying a material fact, admit of a direct answer by a simple yes or no, or which instruct a witness how to answer on material points." 2 *Poe Pl. and Pr.,* sec. 261; *Lee* v. *Tinges,* 7 Md. 234; 1 *Greenleaf Ev.,* sec. 434.

(2) The identical question which the jury were sitting to decide was whether "this building was put up in accordance with the written specifications and plans and the contract." The proper evidence was: (*a*) The contract, including of course, the plans and specifications; and (*b*) the facts as to what work and what kind of work the plaintiff did; and from such evidence it was the jury's function to say whether or

not the building was put up in accordance with the contract·; and permitting the plaintiff, as a witness to answer that precise question was a manifest invasion of the province of the jury.   *Balto. Belt R. R.* v. *Sattler,* 100 Md. 306; *Consolidated Gas Co.* v. *Smith,* 109 Md. 198.

The plaintiffs' first prayer was misleading, because it was calculated to create the impression upon the minds of the jury that a substantial compliance with the contract by the plaintiffs would entitle the plaintiffs to the full contract price; which is not the law.   In order to entitle the plaintiff to sue upon the contract and claim the full contract price, he must show a full compliance on his part, though if he shows a substantial compliance, and the building is accepted by the defendants, he is entitled to recover under the common counts, the contract price less a reasonable deduction for defects or variations from the contract.   30 *Enc. of Law,* 2d ed. 1221; *Presbyterian Church* v. *Hoopes,* 66 Md. 598; *Pope* v. *King,* 108 Md. 46.   Said prayer is also objectionable, because it does not in itself or by reference to any other prayer give the jury any guide as to the amount of the damages.   *W. M. R. R.* v. *Martin,* 110 Md. 563.

The second prayer is misleading because of the direction to the jury to allow the balance of the contract price less deductions for defects in the work caused by "lack of workmanship on the part of the plaintiffs or by the use of material other and inferior to those specified in the contract." The defendants were entitled to deductions for any defects or deficiencies in the completed building from what the contract called for, no matter how caused.   The plaintiffs themselves didn't do any of the work on the building, and a great deal of it was not even done under their direction, but was let out by sub-contracts, and therefore to confine the attention of the jury to defects caused by the "lack of workmanship" on the part.of the plaintiffs, seems to us, misleading.

Again, the phrase "lack of workmanship" refers to the plaintiffs' capacity or skill; whereas, the true issue in every case, and in this case, is not whether the men who did the

work were skilful mechanics, but whether they properly used that skill in performing this particular contract.

In other words, the issue in such a case is not deficiency or unskilfulness in the workmanship, but defect in the work; and, as everybody knows, a skilful workman sometimes does bad work, the prayer ought to have confined the attention of the jury to the character of the work and not to the workmanship of the parties who did it, and specially ought not to have confined them to the lack of workmanship on the part of the plaintiffs, who themselves, did none of the work.

Again, the prayer allows deductions for any deviation from the plans and specifications not acquiesced in by the defendants, and shown to have made said building less valuable to defendants.

We submit that that phrase was also misleading. Defendants might acquiesce in a very substantial deviation from the contract in the sense of accepting and using said building; they would thereby make themselves liable on a *quantum meruit,* but they would not be liable for the whole contract price, if there were defects and deviations from the contract.

Again, we submit that the phrase "shown to have made said building less valuable to the defendants," is not the true theory of deduction for defects. For example, it may be that a factory building of this kind would be just as valuable with a dry sand floor that would cost perhaps $500 as with a concrete floor which was to cost $2,800; and yet, nobody would say that if the plaintiffs had simply put in a sand floor and the defendants had accepted and used the building that they would be obliged to pay the $2,800 that they had promised to pay for the concrete floor.

The plaintiffs' third prayer was bad, because there was no evidence to sustain the statement therein "that the construc tion of said platform was postponed by request of the defendants and was afterward erected promptly upon request;" which objection is embodied in defendants' special exception.

The plaintiffs' fourth prayer was misleading and bad, because it told the jury that there should be no deduction from

the balance of the contract price for any deviation from the contract made by direction of the defendant or their duly authorized agent. This expression, agent, referred to Mr. Conn (because there was no pretense of any evidence that deviations were made by direction of any other agent), and Mr. Conn had no such authority.

The defendants' first prayer should have been granted.

(1) It contained a clear and distinct statement to the jury of what the contract required the plaintiffs to do, which is not contained in any other prayer. The defendants were entitled to have the Court instruct the jury as to the meaning of the contract and the rights and liabilities of the parties thereunder. 11 *Enc. of Pl. and Pr.,* pages 78-80; *Osceola Tribe v. Rost,* 15 Md. 295.

Again, it laid down the true measure of damages, namely, that the jury should deduct for defects if so found, from the balance of the contract price, the reasonable cost of putting the building contracted for in the condition it would have been if the plaintiffs had built it according to contract.

The Court refused this prayer, and by the other prayers instructed the jury that the deduction which they may make for defects would be the difference in the value of the building as constructed, and its value if it had been constructed according to contract.

(1) The Court had ruled early in the case that the plaintiffs could not prove the value of the completed building, under a theory of *quantum meruit,* upon the ground, as defendants' counsel understood it, that there being a written contract in this case specifying the price of the work, if done according to contract, the measure of recovery must be that contract price, less allowances for defects or variations and that the measure of recovery could not be shown by showing the value of the work as done.

The defendants, therefore, proceeded upon what they understood to be the Court's ruling, to prove the defects and what it would cost to make the building conform to the contract, and particularly with regard to the concrete floor. They

proved by two witnesses that the floor was defective, and that the only way to remedy it would have been a new topping, and that would have cost about $1,400.

And the defendants did not put in any evidence, nor was there any in the record as to the difference in the value of the great big factory building with a good concrete floor, such as the contract called for, and a factory building with a concrete floor cracked and soft, such as the plaintiffs put in; the jury might have been satisfied that the floor was imperfect; they may have been satisfied that it would cost $1,400 to make it conform to the contract, and they might have been willing to have given the defendants that deduction for that item alone; yet, the modification of the fifth prayer by the Court emphatically told them that they could not act upon that evidence, and, as above stated, there was no evidence which would guide them to arrive at any particular sum under the prayer as modified by the Court.

Even if the principle of deduction which the Court inserted in the prayer were the correct one, it was not correct in this case because defendants had been led by their understanding of the Court's rulings during the plaintiffs' case, to put in their evidence upon one theory, and to omit to put in any evidence upon the other theory to which the Court's instructions at the end of the case confined the jury.

The principle for the allowance for defects, which the Court instructed the jury should govern, is not the correct principle, but the correct principle is that laid down in the defendants' first prayer which was refused, and in the defendants' fifth prayer as presented, namely, to deduct from the contract price the amount that it would have reasonably cost to have made the building conform to the contract.

In 30 *Enc. of Law,* 2d ed. 1222, the rule is thus stated: "As a general rule, the amount to be allowed to the builder in case of a substantial performance is the necessary cost of remedying the defects or omissions in performance; but when the cost of remedying the omission would be very large as compared with the benefit which would be derived therefrom

by the builder, he has been allowed as a deduction only the
difference in the value of the work as done, and its value if
it had been done in strict compliance with the contract." (In
this "builder" means owner.)

The learned judge below rejected what the Encyclopedia
states is the rule, and adopted what is stated to be the ex-
ception. In *Huysler* v. *Owen,* 61 Mo. 274-5, the Court says:
"When the building has been completed, but differs in plan
of construction or in material employed from that which the
builder contracted to erect, and this is the only element of
damage, and there has been no waiver, the true rule for esti-
mating the damages sustained by the owner, whether the
action be for the contract price or for the value of the labor
and material, is to ascertain what it will cost to make the
building conform to what the builder contracted it should be."

The rule as laid down in the Encyclopaedia and in *Huy-
sler* v. *Owen,* has been approved and applied in *Central
Trust Co.* v. *Arctic Ice Mach. Co.,* 77 Md. 238; *Filston Farm*
v. *Henderson,* 106 Md. 379; *United Surety Co.* v. *Summers,*
110 Md. 99 (see pltffs' 1st prayer, 99-100, approved 123);
*Keeler* v. *Herr,* 157 Ill. 59-60; *Butler* v. *Co.,* 130 U. S.
526-7; *Beha* v. *Ottenberg,* 6 Mack. (D. C.) 348; *Flaherty*
v. *Miner,* 123 N. Y. 388; *Aetna Iron and S. Works* v. *Kos-
suth Co.,* 79 Iowa, 45-6; *Sheppard* v. *Mills,* 70 Ill. App. 75;
*Stickler* v. *Overspeck,* 127 Pa. St. 446, 450 (approved in
146 Pa. St. 502); *Cook* v. *Co.,* 93 Ill. App. 301.


*W. Calvin Chesnut* and *J. Morfit Mullen,* for the appellees.

The plaintiffs' second prayer is based upon the correct
rule of damages, which is as follows:

When a building is put up under a contract in substantial
compliance with the contract, but varying in some unessen-
tial particulars, and when it has been accepted by the owner,
if the builder or contractor has unintentionally or inadvert-
ently failed in some particulars to perform the contract—but
has acted in good faith—he is entitled to recover the full con-
tract price less such sum as should be deducted therefrom to

compensate the owner for the loss in value of the building actually constructed as compared with the value of the building contracted for.

There is no question in this case as to the good faith of the plaintiffs. The defendants admit this.

The appellants contend that in the case at bar the proper rule is not as just outlined, and they say that they should be allowed to deduct from the contract price such a sum as will pay for altering the building as actually constructed to make it conform in every detail to the precise specifications of the building contracted for.

It is clear that there are many cases where these two rules could be used interchangeably, because under many states of facts no difference in consequences flow from applying either one or both. As an instance, take the case of where A. agrees to build B. a house for $10,000, and it is specified that of this $10,000, $500 should be spent in papering the interior. If A. completes the house except for the papering, which he omits entirely to do, it is immaterial to either A. or B. whether you say the measure of damages is $10,000 less $500—*i. e.,* the difference between the value of the house contracted for and the one actually built—or that A. can recover the contract price, $10,000, less what it would cost to make it conform to the contract—because neither A. nor B. has incurred the $500 expense.

But if you take the situation where B. has spent $500 in papering, as the contract required he should, but he has inadvertently failed to comply precisely with some unimportant details of the papering specifications, it is not sound justice to permit B. to deduct the full $500. And this is what the appellants contend for.

The plaintiffs' 2nd prayer and defendant's 2nd prayer state the same proposition of law; there was therefore no error in granting the plaintiffs' second prayer. The defendants' first and fifth prayers (the latter before the modification) either stated a rule of law inconsistent with or the same as defendants' second prayer. In either event there was no

error in rejecting the defendants' first prayer, and in modi-
fying the fifth prayer.

The principles controlling such a situation are settled ·in
the Maryland practice by the following authorities: *Pa. Ry.
Co.* v. *Cecil,* 111 Md. 288; *Spencer* v. *Trafford,* 42 Md. 1-21;
*Young* v. *Mertens,* 27 Md. 114; *Harford County* v. *Wise,* 71
Md. 43.

Even if this Court, after reviewing the reasons assigned
should think that, in this case the appellants can still question
the propriety of setting .out the rule of damages as outlined
by the trial Court, it will be apparent from a review of all
the authorities dealing with the question that the lower Court
has correctly stated the law.    2 *Sedgwick on Damages,* secs.
616 and 617; *Small* v. *Lee,* 61 S. E. 831; 4 Ga. App. 395;
*Norcross Bros.* v. *Vose,* 85 N. E. 468 (Mass.); *Gleason* v..
*Smith,* 9 Cushing (Mass.) 484; *Madisonville* v. *Rosser &
Castoe,* 8 Ohio C. C. 387; *Pinches* v. *Swedish Lutheran
Church,* 55 Conn. 186; *Manning* v. *School District No. 4,*
124 Wis. 84.

These authorities unequivocally maintain the proposition,
that where a building has been substantially constructed in
accordance with the contract requirements, but varies in
some unessential particulars, and it has been accepted by the
owner, the measure of damages, if the contractor has acted
in good faith, is the full contract price less such sum as
should be deducted to indemnify the owner for the deviations
from the plans and specifications.    They discuss the differ-
ence between this rule, and the rule contended for by the ap-
pellants, that the measure of damages is the cost of making
the building actually constructed, correspond precisely with
all the details of the plans and specifications.    The principle
involved in all of these authorities is, that, in those cases
where it would be unjust to apply the rule contended for by
the appellants, a Court of law will not work a hardship upon
one who has contracted to build a house or other structure,
merely because he does not comply in detail with all contract
requirements, if he has acted in good faith.    The proper

measure of damages is the difference between the value of the building as contracted for, and as actually constructed, without reference to what it would cost to make it correspond to the precise requirements of the plans and specifications.

It is pointed out in *Sedgwick on Damages, supra,* that there is a distinction between the measure of damages, and the manner in which the amount of damages is proved. The measure of damages means the rule of law applicable to a certain state of facts, laid down as a standard to guide the jury in determining the amount of recoupment, if any. The manner of proving the damages is, of course, quite different from the measure of the damages; the former refers only to the character of the evidence that is to be adduced in order to show the facts of each particular case. The rule of law (*i. e.* the measure of damages) is the same in all cases, but the nature of the proof to be adduced varies with the facts of each particular case.

There are many cases (for instance—where a part of the building, which can be easily supplied, such as a cement floor—has been entirely omitted) where it would be proper to give evidence of what it would cost to complete the building in the omitted particular. In such a case allowing the measure of damages to be dependent upon the cost of completing the building, works no hardship upon anybody.

Some of the authorities, therefore, state both of the two rules, the one as we contend for, and the other as the appellants contend for (see *Brantly on Contracts,* pages 218-219). And in some of the authorities, the rule is stated as we contend for, without referring to the propriety of allowing evidence to show what it would cost to complete the building, to make it as contracted for. *Cullen* v. *Sears,* 112 Mass. 299; *Kane* v. *Stone Co.,* 39 Ohio State, 1; *Woodward* v. *McGuire,* 3 *Murphrey* (N. C.) 501.

Other cases state the measure of damages is what it would cost to make the building correspond precisely with the plans and specifications of the contract. We have found no case maintaining the proposition that where it would work a hard-

ship upon the contractor to make the building comply with
the precise requirements of the contract, if he has varied in
some unessential details, and did so in good faith, the proper
measure of damages is to be considered with reference to the
cost of making the building as constructed correspond to the
precise contract requirements.    All the authorities are
unanimous in holding that, where it would work a hardship
upon the contractor who has acted in good faith, to make the
building correspond precisely with the contract requirements,
if it has been accepted by the owner and varies in unessential
particulars, the proper rule of damages is to allow the owner
to deduct merely the difference in value between the building
contracted for, and the one actually constructed.

The case of *Small* v. *Lee*, 61 S. E. 831, 4 Ga. App. 495,
involved the very question presented in the case at bar.    The
principle was fully discussed and the Court decided in favor
of our contention.    Say the Court in the course of the opin-
ion: "Where the defects in the house as constructed may be
remedied at a reasonable expense, it would be proper, we
think, to deduct from the contract price the sum which it
would cost to complete it according to the requirements of
the plans and specifications.    *Blakeslee* v. *Holt*, 42 Conn.
226.    If the contractor has built a structure substantially
adapted to the purposes for which it was built and of which
the owner is in the use and enjoyment, but the defects of the
structure cannot be made to conform strictly to the require-
ments of the contract, except by an expenditure which would
deprive the contractor of adequate compensation for his labor
and materials, justice and equity would require the adoption
of another measure of damages.

"In this case the contractor did not wilfully deviate from
the plans and specifications, but built a house according to
his construction of the measurements and rooms required.
The house was in every respect a compliance with the con-
tract, except that it failed to make the rooms and veranda of
such dimensions as the owner of the house wanted, and what
she insisted she was to receive.    She accepted the house and

occupies it as her residence, and has thus received from the contractor a substantial benefit from his labor and materials. We do not mean to say that she has, by accepting the house, waived her right to any damage which she has incurred by reason of the contractor's failure to comply with the plans and specifications in reference to the dimensions of the rooms; for, notwithstanding the fact that she received the house and is occupying it, she is still entitled to be in the same condition financially as she would have been had the contract been fully performed by the contractor. She has a right to a house as good as that which the contractor agreed to furnish, but the assertion of her right should be in such a manner as not to deprive the contractor of a fair and just compensation for his labor and materials. Under the facts of this case, we think that the true measure of damages, and one which would not be unjust in its application to either party, would be the difference between the value of the house as finished and the house as it ought to have been finished. To require that the house should be rebuilt, and that the contractor should pay the cost of rebuilding; or that the estimated cost of making the house conform to the contract should be allowed as damages, would be to give an unconscionable advantage to the owner; and would deprive the contractor of adequate compensation for his work and materials." See also *Gleason* v. *Smith*, 9 Cushing.

In *Norcross Bros* v. *Vose*, 85 N. E. (Mass.) 468, the question before the Court was as to the proper rule of damages for failure to construct a cement floor and to put on the topping properly. The Court held in substance that the general rule of damages was to deduct from the contract price of the floor the lessened value of the floors as they were actually constructed (just as we contend for). If the only feasible way to make the floors serviceable was to resurface them (and this is not our case because defendants in the case at bar used the floors for three years), then the jury could allow as damages the cost of resurfacing, but if resurfacing was inexpedient, the jury must reject the consideration of this cost.

As far as we know, there are no cases decided in Mary-land that deal with the precise proposition now being dis-cussed; but our situation is like the case of an article con-tracted to be sold with a warranty of soundness or fitness, when the article sold does not comply with the warranty. It is well-settled in Maryland, in cases of this kind, that when the article sold has been accepted, the measure of damages is the difference between the value of the thing warranted, with the defects warranted against, and the value it would have had without such defects—that is, the defendant is allowed to recoup the difference between the value of the thing con-tracted for and the thing actually supplied—just as we con-tend for. *Horn* v. *Buck,* 48 Md. 358, 372; *Lane* v. *Lantz,* 27 Md. 216.

The kernel in the nutshell of all the law dealing with this point is that the rule we contend for is a rule of law; the question as to the cost of making a building conform to pre-cise contract requirements, is always one of evidence merely. Whether or not such evidence can be considered in a particu-lar case depends upon its own facts. The test to be applied in each case is: Does, under all the facts of the case, it work a hardship upon the contractor?

That it would work a hardship and a great injustice upon the plaintiffs to allow the defendants the rule they contend for in the case at bar, appears from the following reasons:

First. The defendants in this case have sold the building, which is the subject-matter of this suit, and have suffered no real loss in so doing. The defendants therefore, would be in no better position, if they were allowed to recoup the act-ual cost of putting in a new top to the cement floor. It makes no difference to them whether or not the building now com-plies with precise contract requirements, provided they are allowed an opportunity to recoup any financial loss that they may claim to have suffered. Such an opportunity was given them before the jury.

Second. The measure of damages proposed by the appel-lants is not based upon an outlay that they have actually

made, and the Court has not before it a case where in order to make the building correspond to contract requirements, the defendants have suffered actual loss in spending money to have the building measure up to what they specifically contracted for.   If these defendants had actually spent $1,500 or $1,700 to make the cement floor comply in each precise detail with the one referred to in the contract, and had been compelled to do so to have a serviceable floor, this Court would have an entirely different case before it, but the fact is that a cement floor was built in substantial compliance with the contract requirements, and that the defendants had the use of it and that, from all that we know to the contrary, it answered all of their needs during the whole of the period in which they owned and used the building contracted for.

Third. The contention of the appellants ignores the fact that a cement floor was built which apparently satisfied the needs of the appellants during the time that they used the building, and that no credit is given the appellees for the cement floor as actually constructed, including both the base and the topping, both of which were used during the whole period of the ownership and use of this building by the appellants.

Fourth. The testimony in the record by the witnesses for the appellants as to what it would cost to make the cement floor correspond with the precise contract requirements is all arrived at by estimates made almost four years after the completion of the contract, and it is submitted that this estimate of the defendants, tending to show the cost of making the floor conform to contract requirements, is purely speculative.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from a judgment of the Superior Court of Baltimore City in an action of assumpsit on a building contract. The declaration contains the common counts together with a special one on the contract. The case was tried, on an issue joined on the general issue pleas, before a

jury which rendered a verdict for the plaintiff.  From the judgment entered on that verdict the appeal was taken.

It appears from the record that on April 20th, 1905, the appellees, Stansfield & Son, who were builders and contractors of long experience in Baltimore City, entered into a contract with the Iron Clad Manufacturing Company, a New York Corporation, for the erection in Baltimore of a one-story factory building 58 feet wide by 105 feet deep to be used in the manufacture of galvanized or enameled ware. The contract was not drawn in formal style but was entered into by means of written proposals and acceptances simultaneously made by the respective parties.  No formal plans or specifications accompanied the contract but the several written documents of which it was composed contained a variety of provisions which taken together may be regarded as tantamount to a set of specifications.

These specifications called for a brick building, of the dimensions mentioned, with a slag roof to be guaranteed against leakage and wooden floor to be constructed according to the specifications, the material to be of the best quality, of its specified kinds and the work to be done in the best workmanlike manner.  The building was to be completed, in two weeks from the time of starting work on it, and was required to be satisfactory to the company for which it was erected and meet the approval of its master mechanic.  The contract price for the complete building was fixed at $2,900.

After the building had been commenced the company, having acquired more land adjacent to the lot on which it was being erected, desired to have a larger factory.  A supplemental contract was accordingly made between the parties, on May 9th, 1905, by written proposal and acceptance for constructing the proposed building of substantially the character originally intended but of the dimensions of 276 feet by 105 feet at an additional cost of $7,200 with the option to the company of having a cement floor at the further cost of $2,800.  The company having elected to have the cement floor, the total contract price became $12,900.

. The supplemental contract was in reality made with the Iron Clad Company of Maine which had in the meantime been formed by the persons interested in the New York corporation, but no complication results from that circumstance as both corporations admitted in open Court their joint liability for whatever was justly due under the contract.

The building was erected and taken possession of by the companies and used for the manufacture of their wares, and payments were made by them on account of its construction. The suit was brought for an alleged balance of $5,100 of the contract price.

There is evidence in the record tending to prove that the plaintiffs had complied with all of the provisions of the several contracts on their part and also evidence of a contrary tenor. The defendant companies sought during the trial below to recoup from the contract price for alleged defects in the work and deviations from the contracts.

At the close of the case below the plaintiffs offered six prayers and the defendants offered seven. They will be set out in the report of the case by the Reporter.

The Court granted the plaintiffs' third, fourth and fifth prayers in the form in which they were offered and their first and second prayers, after modifying them in certain respects, and rejected their sixth prayer.

The defendants' first and seventh prayers were refused and their second, third, fourth and sixth prayers were granted as offered and their fifth prayer was granted as modified by the Court.

The appellants' criticism of the plaintiffs' first prayer as granted is that it was misleading and calculated to create the impression upon the minds of the jury that a *substantial* compliance with the contract by the plaintiffs would entitle them to the full contract price. We do not think that the prayer is fairly open to that objection. It instructs the jury that if they find from the evidence that the plaintiffs constructed the building in substantial accordance with the terms of the contracts and that the defendants had occupied and used it

as a galvanizing factory and that it was reasonably satisfactory and acceptable to them and that there was a balance due on account of its construction then their verdict should be for the plaintiffs, the defendants having waived in open Court the requisite of approval of the building by their master mechanic. The prayer does not base the plaintiffs' right of recovery upon the single ground of an erection of the building in substantial accordance with the terms of the contract but required the jury also to find that the defendants had accepted and used it for the purpose for which it was erected and had found it reasonably satisfactory and acceptable. The prayer does not say that the jury should allow the plaintiffs the full contract price if they found the facts upon which it is predicated. It goes simply to the plaintiffs' right of recovery. It and the second prayer together make full and just provision for proper reductions in arriving at a verdict from the contract price, for any defects in the building which the jury might find to exist.

The question of the measure of damages is dealt with in the second prayers of the plaintiffs and defendants, which in effect state the same rule upon the subject although their statements of it differ slightly in form. Both of the prayers provide for the finding by the jury of the existence of defects in the building caused by lack of workmanship or inferior material used, or deviations from the plans and specifications not acquiesced in by the defendants. The plaintiffs' prayer directs the jury, in arriving at their verdict, to deduct from the unpaid balance of the contract price, a sum equal to the extent to which any such defects and imperfections "have made said building less valuable to the defendants." The defendants' prayer directs the jury to deduct from the balance of the contract price remaining unpaid "such sum as they may find that the value of the building was lessened by reason of such defects or imperfections." Both the plaintiffs and defendants, in these prayers stating the measure of damages, adopt the contract price as the standard and direct that the defendants be compensated for defects or imperfections

in the building by deducting from the unpaid balance of the contract price the amount that the value of the building was lessened by the defects or imperfections.

The measure of damages under the facts of this case was in our opinion correctly stated in those two prayers, but in any event the appellants cannot complain of the granting at the instance of the plaintiff, of essentially the same instruction which was granted at their own request to them as defendants, not only in their prayer now under consideration but also in their third and fifth prayers.

We find no error in the action of the Court in granting the plaintiffs' third prayer. Nor can we agree with the appellants that the record contains no evidence to sustain the statement in that prayer "that the construction of the said platform was postponed by request of the defendants and was afterwards erected promptly upon request." The contract called for the erection inside of the building of a loading platform, of the same heighth as the floor of a freight car, to facilitate the handling and loading of freight. The record contains the evidence of J. Elmer Stanfield one of the plaintiffs that the loading platforms were put up as soon as the defendants had the railroad tracks run alongside of the building and that it was impossible to construct them sooner as until the elevation of the tracks was fixed it could not be determined how high to make the loading platforms. He further testified that the defendants "wouldn't allow him to put the risers in until the siding was in because they wanted them level with the bottom of the cars." There is evidence in the record that the "risers" were platforms at each door, on the side of the building next to the car track, which were substituted for the long platform at the suggestion of Mr. Conn, the superintendent of the defendants' factory, who testified that the defendants had approved the change.

The plaintiffs' fourth and fifth prayers correctly state the law with reference to the matters to which they respectively refer.

The defendants' first prayer was properly rejected. It instructed the jury that if they found that the plaintiffs did not perform their agreement in any one of ten particulars, which it stated in separate numbered paragraphs, they should deduct from the unpaid balance of the contract price the reasonable cost of putting the building contracted for in the same condition as if the plaintiffs had performed their agreement in all particulars. Now as to some of these enumerated particulars there was evidence tending to show a failure to fully meet the requirements of the contract and also evidence tending to show what it would cost to make the building conform to the contract in these respects, while as to others of the particulars there was no such eivdence at all. Again the fourth of the enumerated particulars, to the performance of which the prayer holds the plaintiffs, is not correctly stated therein. As stated in the prayer it is "to put as many skylights in the whole roof 6 by 7 as would give the same amount of light over the whole building that six skylights five feet by six feet would have given in the building first contracted for, viz, 58 feet by 105 feet." What the contract of May 9th, 1905, which provides for the erection of the enlarged building says in that respect is "I will make the skylighting six by seven feet throughout the building and will have enough skylights to make the building perfectly light so that your men can work in any part of the building without using artificial light."

We find no error in the rejection of the defendants' seventh prayer. It undertakes to so construe the contracts as to give to the defendants the benefit, of what the wooden floor called for by the contract of April 20th, 1905, would have cost, as an incident of their election to have a cement floor in the entire building. The appellees in the offer to erect the building say in plain English that if the defendants "decide to use a cement floor throughout the new factory building as well as the factory building in the first contract I made with you I will charge $2,800 extra." The written acceptance of that offer by the appellants appears on its face. No allowance

of cost for the wooden floor is mentioned or suggested. The Court cannot make a different contract, for the parties, from the one which they have themselves made.

We find no error in the Court's action in making modifications in certain of the granted prayers as they were put in shape thereby to fairly present the law of the case to the jury.

The record contains fifteen exceptions to rulings on evidence. The first exception is to the overruling of the defendants objection to this question put to the plaintiff on his own behalf. "Can you state whether or not based on your experience as a builder this building was put up in accordance with the written specifications, plans and the contract?" The record does not show that the grounds of the objection were stated when it was made but it is now contended that it was objectionable because it was leading and also because it asked the witness the very question that the jury were to decide.

It is too late now to raise for the first time the objection that the question was leading. That should have been raised below when the question was asked so that the examining counsel could have put the inquiry in a proper form if he desired to do so. *Poe's Practice,* sec. 274; *Brown* v. *Hardcastle,* 63 Md. 495; *Kerby* v. *Kerby,* 57 Md. 361.

The other ground of objection to the question was also untenable. In the cases of *Balto. Belt R. R.* v. *Sadtler,* 100 Md. 306, and *Con. Gas. Co.* v. *Smith,* 109 Md. 198, on which the appellant relied in this connection, we held that *experts* could not be allowed to express a mere opinion upon the very question which the jury are to decide as that tends to substitute the opinion of the expert for that of the jury which the litigants are entitled to have. The witness here was not a mere expert. He was the contractor himself who had actual knowledge of whether the work called for by the contract had been done. The question it is true asked for an answer based on his experience as a builder but it was not a hypothetical question put to an expert having no actual knowledge of the facts to elicit from him a mere opinion. The record shows

the question to have been a formal or opening one as the witness was then asked separately in reference to the plaintiffs' compliance with all of the provisions of the contract on their part. Under these circumstances we find no reversible error in the ruling in that exception.

We do not notice in detail the second exception because the record does not show that the question objected to was answered and also because the same question appears to have been afterwards put to the witness without objection and answered.

Nor do we regard it as necessary to comment in detail upon the rulings upon the questions put to the witness Conn which form the basis of the third to the eighth exceptions inclusive, nor upon the Court's action upon the question put to the witness Stanfield presented by the twelfth exception. All of those rulings were rendered immaterial by the subsequent waiver in open Court by the defendants of the provision of the contract requiring the approval of the building by their master mechanic.

The ninth exception was taken to the refusal of the Court to permit the defendants to ask the witness Stanfield upon cross-examination a question based upon a statement made in a letter from the general manager of the defendants in New York to their Baltimore office. The subject-matter to which the question related had been well covered by the previous testimony of the witness as well as by that of Conn the factory superintendent and we do not think the trial Judge at all exceeded his legitimate control of the limits of cross-examination in the ruling to which this exception was taken.

The plaintiffs asked their witness Stanfield on re-direct examination "Do you know whether this company, the Iron Clad Company used material there that would damage a cement floor?" He answered, "Yes, sir; I do." He was then asked, "What did they use?" The defendants objected to the question but the Court overruled the objection. The ninth exception was taken to that ruling. There was no error in

permitting the question to be asked.   The defendants had contended, and offered evidence in support of the contention, that the cement floor had been defectively constructed.   The answer of the witness tended to show that the alleged ' defects in the floor were due to the spilling on it of acids used by the defendants' employees in the processes of manufacture carried on by them.   It was quite within the discretion of the trial judge to allow the question to be put.   *N. Y. P., etc., Ry. Co.* v. *Jones,* 94 Md. 24-35 ; *Blake* v. *Stump,* 73 Md. 160 ; *Miller* v. *Leib,* 109 Md. 414.

The eleventh exception was to the Court's refusal to strike out the following answer of the witness Stansfield, which had been admitted subject to exception.   "Mr. Conn told me it was due to the acid and stuff they used in there for the pick·ling ; he said they couldn't help it ; that they were bound to get it over the floor.   He said, that will have to go, just that way.   He said that it was no fault of mine."

In view of the fact that the witness Conn had been shown to be in charge of the defendants factory and the processes in operation there, we think the evidence was admissible as tending to show an admission on their part that the floor had been injured in the manner stated in the answer.

Without reviewing in detail the rulings on evidence which form the subjects of the thirteenth, fourteenth and fifteenth bills of exception, we say that we have examined all of them and find no reversible error in them.

Finding no reversible error in any of the actions or rulings of the Court below we will affirm the judgment.

*Judgment affirmed with costs.*